JDG:KMT/MKP
F.#2011R01816

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA                    11 CR 800 (WFK)

         - against -

SEMYON BUMAGIN,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - -X


MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S
MOTIONS *IN LIMINE*


                         KELLY T. CURRIE
                         ACTING UNITED STATES ATTORNEY
                         Eastern District of New York
                         271 Cadman Plaza East
                         Brooklyn, New York 11201


Kevin Trowel
Moira Kim Penza
Assistant U.S. Attorneys
     (Of Counsel)

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................... 3

STATEMENT OF FACTS ......................................................................................... 4

    I.      Uncharged August 2010 Pawn Shop Robbery ................................................... 4

    II.     Charged 2011 Hobbs Act Robbery Conspiracy and Firearm/Ammunition Possession ................................................................................................ 5

    III.    Other Uncharged Conduct Discussed During the Time Period of the Charged Robbery Conspiracy ......................................................................................... 6

    IV.    Defendant's Pre- and Post-Arrest Statements to Law Enforcement ................. 7

ARGUMENT ...................................................................................................... 9

    I.      Evidence of the Defendant's Involvement in Uncharged Crimes and Other Bad Acts Is Admissible at Trial as Direct Evidence of the Charged Crimes or, Alternatively, Pursuant to Federal Rule of Evidence 404(b) ............................ 9

        A.    Legal Standard ................................................................................ 9

            1.    Evidence of the Defendant's Prior Bad Acts Are Admissible as Direct Evidence of the Conspiracy Charged in Count One ..................................................... 9

            2.    Evidence of the Defendant's Prior Bad Acts Are Admissible Pursuant to Fed. R. Evid. 404(b) ............... 11

        B.    Application ...................................................................................... 12

            1.    Evidence of the Defendant's 2010 Plan to Rob a Pawn Shop Owner Is Admissible as Direct Evidence of the Charged Hobbs Act Conspiracy ..................................... 12

            2.    Evidence of the Defendant's 2010 Plan to Rob a Pawn Shop Is Admissible Pursuant to Federal Rule of Evidence 404(b) ............................................................ 14

            3.    Evidence of the Defendant's Possession of Firearms Is Admissible Pursuant to Rule 404(b) ............................. 15

        C.    The Probative Value of this Evidence Offered Substantially Outweighs

Any Prejudice Under Rule 403 ............................................................ 17

II.      A Defendant's Entrapment Defense Opens the Door to Predisposition
         Evidence ............................................................................................... 19

         A.      Legal Standard ........................................................................... 19

         B.      Application ................................................................................. 20

III.     The Defendant Should Be Precluded from Raising an Insanity Defense or
         From Offering Evidence Relating to a Mental Disease or Defect or Any other
         Mental Condition ................................................................................... 26

IV.      The Defendant's Pre- and Post-Arrest Statements Were Voluntary and Are
         Admissible at Trial ................................................................................. 27

V.       The Defendant Should be Precluded from Cross-Examining Law
         Enforcement Witnesses in an Effort to Solicit Allegedly Exculpatory
         Statements ............................................................................................. 28

VI.      The Government Is Entitled to Cross-Examine the Defendant Under Rule
         609(a)(2) About His 2002 Convictions and Should be Permitted to Cross-
         Examine Him about His 1999 Conviction Under Rule 609(b) ................... 31

         A.      Legal Standard ........................................................................... 31

         B.      Application ................................................................................. 33

                 1.       The Defendant's 2002 Conviction ................................. 33

                 2.       The Defendant's 1999 Conviction ................................. 35

VII.     Pursuant to the Stipulation Entered Into By the Parties, the Defendant Should
         Be Precluded From Using the Draft Transcriptions at Trial ...................... 38

CONCLUSION ................................................................................................... 39

PRELIMINARY STATEMENT

The government respectfully submits this memorandum in support of its motions in limine to:

(1) admit certain conduct as direct evidence of the charged crimes and/or pursuant to Rule 404(b) of the Federal Rules of Evidence to demonstrate the defendant's motive, opportunity, intent, preparation, plan, knowledge, absence of mistake and lack of accident;

(2) admit evidence of uncharged conduct in its case-in-chief, or in its rebuttal case, if the defendant raises an entrapment defense;

(3) preclude the defendant from raising an insanity defense or from offering evidence relating to a mental disease or defect or any other mental condition;

(4) admit certain voluntary pre-arrest and post-arrest statements made by the defendant to law enforcement;

(5) preclude the defendant from cross-examining certain government witnesses to elicit the defendant's exculpatory statements in the form of inadmissible hearsay;

(6) cross-examine the defendant, should he testify, about certain prior convictions under Federal Rule of Evidence 609(a); and

(7) preclude the defendant from using draft translations at trial pursuant to the stipulation entered into by the parties on or about January 6, 2012.

For the reasons that follow, the government submits that each of these motions in limine should be granted.

<u>STATEMENT OF FACTS</u>

The defendant Semyon Bumagin, is charged in a four-count indictment with (1) Hobbs Act robbery conspiracy, in violation of 18 U.S.C. § 1951(a); (2) illegal use of a firearm, in violation of 18 U.S.C. § 924(c)(1)(A)(i); (3) being a felon in possession of ammunition, in violation of 18 U.S.C. § 924(a)(2), (g)(1); and (4) being a felon in possession of a firearm, in violation of 18 U.S.C. § 924(a)(2), (g)(1).  Specifically, in approximately August and September 2011, the defendant planned with a co-conspirator ("CC1") and a cooperating witness ("CW1") – who was acting at the direction of agents of the Federal Bureau of Investigation ("FBI") – to commit a robbery of a warehouse in Long Island, New York, and thereby take watches and other jewelry.  In preparing for the robbery, the defendant, who has previous felony convictions in the Southern District of New York, obtained a firearm and ammunition, which he then gave to CW1, who in turn gave them to FBI agents to be vouchered as evidence in the case.

I.  <u>Uncharged August 2010 Pawn Shop Robbery</u>

The investigation that led to the instant charges began in or around May 2010, when CW1 began providing the FBI with information regarding criminal activities occurring in Brooklyn, New York and elsewhere.  CW1 agreed to wear a recording device to record conversations he had with the defendant.

In August 2010, in conversations recorded by CW1, the defendant proposed that he and CW1 rob a pawn shop located in Brooklyn.  In the recording, the defendant can be heard explaining the proposed robbery to CW1: the defendant had been in contact with an employee at the pawn shop who proposed that the defendant rob the shop's owner when the owner traveled to Manhattan's Diamond District carrying gold jewelry.  The pawn shop

employee asked the defendant for a portion of the proceeds in exchange for his part in setting up the robbery.

During a conversation recorded by CW1, the defendant asked CW1 to participate in the robbery and to obtain a firearm and silencer to use during the job. In a subsequent recorded conversation with CW1, the defendant expressed his anger at the pawn shop employee, who had become reluctant to go through with the plan. The defendant told CW1 that he wanted to rob the pawn shop owner because he needed money and he told CW1 that he was going to threaten the employee to pressure him to go through with the plan. The defendant explained that he was prepared to kill the pawn shop owner in the course of the robbery, to avoid being arrested. The plan to rob the pawn shop was ultimately abandoned.

II.   Charged 2011 Hobbs Act Robbery Conspiracy and Firearm/Ammunition Possession

In a recorded conversation in early August 2011, the defendant told CW1 that he had a firearm that he wanted to use to commit robberies with CW1. On August 31, 2011, at the direction of the FBI, CW1 proposed to the defendant that they rob a fictitious warehouse storing luxury watches. The defendant immediately agreed to participate. Over the next two months, in the course of numerous recorded conversations, the defendant planned the robbery with CW1. During this period, the defendant recruited CC1, who is related to the defendant, to participate in the robbery.

In the recorded conversations, the defendant and CW1 frequently discussed obtaining a firearm for use in the robbery. On September 28, 2011, for example, they discussed purchasing a firearm from someone in the neighborhood. On October 15, 2011, the defendant told CW1 that he had a gun without a magazine and explained that CC1 o

5

would obtain a magazine for the gun.  That same day, the defendant, CC1 and CW1 discussed having CC1 travel to Florida to purchase a gun.  CC1 agreed to take the trip, but the trip never materialized.

Following these discussions, on October 17, 2011, the defendant met with CW1 in CW1's car, which was outfitted with a video recording device, and gave the defendant a package containing ammunition.    The next day, on October 18, 2011, the defendant met with CW1 again and the defendant provided CW1 with a handgun.  The CW provided the ammunition and the gun to the FBI.

III.    Other Uncharged Conduct Discussed During the Time Period of the Charged
        Robbery Conspiracy

Throughout the course of the investigation, in conversations recorded by CW1 at the direction of the FBI, the defendant discussed numerous criminal schemes and acts in which he had participated.  For example, on several occasions between August 2011 and October 2011, the defendant discussed having disposed of guns in an inlet next to a gas station on West 20th Street and Neptune Avenue in Brooklyn.  On August 31, 2011, for example, the defendant and CW1 visited the gas station and the defendant admitted, in sum and substance, that he had been disposing of firearms in the inlet for many years, including once with CW1.  On that date, the defendant admitted that several of the weapons had been used in murders that he had been involved in, including the murder of an individual who the defendant identified as "Lyova."  On October 8, 2011, the defendant and CW again visited the same gas station, and the defendant said he had disposed of two guns with handmade silencers in the inlet.

During the same time period, the defendant explained to CW1 that he was involved in an extortion to collect a debt owed to a female associate of the defendant's. The defendant can be heard attempting to collect the debt in several of the recordings. For example, on August 31, 2011, in the presence of CW1, the defendant met with the alleged debtor and attempted to collect the debt. As discussed below, the defendant later admitted to law enforcement officers that the woman for whom he was working had provided him a firearm to use for purposes of collecting the debt.

In addition to the planned warehouse robbery, the defendant discussed a number of other potential thefts. For example, on September 21, 2011, the defendant cased a jewelry store and proposed that he and CW rob it. The defendant also informed CW1 that a day earlier he had stolen a $1500 coat from a store. On September 28, 2011, the defendant suggested that he and CW1 rob the defendant's then-girlfriend, who had a Cartier watch and other valuables.

IV.   Defendant's Pre- and Post-Arrest Statements to Law Enforcement

On October 24, 2011, prior to the defendant's arrest, the defendant was interviewed near his house by the FBI and NYPD. During the interview, the defendant admitted to law enforcement, among other things, that he was a "vor v zakone," or a Russian "thief-in-law." The defendant showed the interviewing law enforcement agents the star tattoos on his shoulders and knees, which indicate high status in the Russian criminal underworld. The defendant also admitted to law enforcement that he had recently been introduced to a woman who was seeking his help collecting a debt.

The defendant was arrested on November 2, 2011 by FBI agents pursuant to an arrest warrant issued in the Eastern District of New York. The defendant was provided

his <u>Miranda</u> warnings and he signed a written waiver of those rights and agreed to speak to FBI Agents and NYPD detectives without a lawyer present.  During the interview, the defendant admitted, among other things, to planning the warehouse robbery with CW1 and CC1 and to providing a gun to CW1 for use in the robbery.  He also admitted to planning a pawn shop robbery in August 2010 with an employee of the pawn shop, and he acknowledged that he had discussed killing the pawn shop owner.  The defendant went on to tell law enforcement officers that he had been given a firearm by a woman who wanted to collect a $300,000 debt.  The defendant explained that the gun was meant to assist and protect him during his debt collection and he expected to be paid fifty percent of any sum he collected.  He said the gun she provided him had a magazine that did not fit and that the woman also provided him with loose rounds of ammunition.

<u>ARGUMENT</u>

I.    Evidence of the Defendant's Involvement in Uncharged Crimes and Other Bad Acts
      Is Admissible at Trial as Direct Evidence of the Charged Crimes or, Alternatively,
      <u>Pursuant to Federal Rule of Evidence 404(b)</u>

As described below the defendant has been convicted of, or admitted participating in, criminal acts that are admissible at trial as either (1) direct evidence of the crimes charge in the indictment or (2) to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake and lack of accident pursuant to Federal Rule of Evidence 404(b).  The government respectfully moves <u>in</u> <u>limine</u> and provides notice to the defendant of its intention to introduce this evidence at trial.

A.    <u>Legal Standard</u>

1.    Evidence of the Defendant's Prior Bad Acts Are Admissible as Direct
      <u>Evidence of the Conspiracy Charged in Count One</u>

Evidence of certain uncharged acts, including uncharged criminal activity, is admissible when it constitutes direct evidence of the crimes charged in the indictment.  <u>See</u>, <u>e.g.</u>, <u>United States v. Carboni</u>, 204 F.3d 39, 44 (2d Cir. 2000); <u>United States v. Thai</u>, 29 F.3d 785, 812 (2d Cir. 1994); <u>United States v. Towne</u>, 870 F.2d 880, 886 (2d Cir. 1989).  In <u>Towne</u>, the Second Circuit identified three categories of uncharged criminal activity that constitute direct evidence of the charged offense:

> Evidence of uncharged criminal activity is not considered 'other crimes' evidence under Fed. R. Evid. 404(b) if it 'arose out of the same transaction or series of transactions as the charged offense, if it [is] inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime [on] trial.'

<u>Towne</u>, 870 F.2d at 886 (quoting <u>United States v. Weeks</u>, 716 F.2d 830, 832 (11th Cir. 1983)); <u>see</u> <u>also</u> <u>Carboni</u>, 204 F.3d at 44; <u>United States v. Gonzalez</u>, 110 F.3d 936, 942 (2d

Cir. 1997); United States v. Khan, 591 F.Supp.2d 202, 205 (E.D.N.Y. 2008) (quoting Carboni).

As the Second Circuit has explained, evidence is "not other act evidence within the meaning of Rule 404(b)" if it is "admissible to prove material facts other than [the defendant's] propensity to commit a crime." See also United States v. Concepcion, 983 F.2d 369, 392 (2d Cir. 1992). Indeed, relevant evidence is "not confined to that which directly establishes an element of the crime." Gonzalez, 110 F.3d at 941. In this context, "[t]o be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." Id.; see also United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994) ("[E]vidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense."). Such evidence is also admissible to corroborate the testimony of cooperating witnesses. See United States v. Everett, 825 F.2d 658, 660-61 (2d Cir. 1987).

Where an indictment contains a conspiracy charge, "uncharged acts may be admissible as direct evidence of the conspiracy itself." United States v. Riccardi, No. 14-2986-CR, 2015 WL 3916101, at *3 (2d Cir. June 26, 2015) (quoting United States v. Eppolito, 543 F.3d 25, 47 (2d Cir. 2008)). Such evidence is admissible where it "show[s] the development of the relationship between" participants in the charged crime, "provid[ing] background for the events alleged in the indictment" and "enabl[ing] the jury to understand the complete story of the crimes charged, or how the illegal relationship between coconspirators developed." United States. v. Mercado, 573 F.3d 138, 141 (2d Cir. 2009). For example, evidence of uncharged robberies is admissible to show the "existence and

structure" of a robbery conspiracy, see Thai, 29 F.3d at 812-13; see also United States v. Steele, No. 09-0978-CR, 2010 WL 3025200, at *5 (2d Cir. Aug. 4, 2010), and evidence of a defendant's leadership role in an uncharged crime is admissible as direct evidence of his leadership in a charged crime, see United States v. Barrett, No. 10 CR 809, 2011 WL 6704862, at *7 (E.D.N.Y. Dec. 21, 2011).

> 2. Evidence of the Defendant's Prior Bad Acts Are Admissible Pursuant to Fed. R. Evid. 404(b)

Alternatively, under Rule 404(b), evidence of a defendant's "other crimes, wrongs, or acts" is admissible when it is offered for any purpose other than the defendant's criminal propensity. See, e.g., United States v. Garcia, 291 F.3d 127, 136 (2d Cir. 2002) (quoting United States v. Pitre, 960 F.2d 1112, 1118 (2d Cir. 1992)); United States v. Germosen, 139 F. 3d 120, 127 (2d Cir. 1998); United States v. Levy, 731 F.2d 997, 1002 (2d Cir. 1984). Rule 404(b) itself contains a non-exhaustive list of proper purposes for which "other act or crime" evidence may be admitted, including "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Fed. R. Evid. 404(b); see also Levy, 731 F.2d at 1002; United States v. Taylor, No. 10 CR 268, 2012 WL 5546835, at *3 (E.D.N.Y. Nov. 14, 2012) (holding that 404(b) evidence is properly admissible to show a relationship of trust between coconspirators). The Second Circuit has emphasized that Rule 404(b) is a rule of broad reach and liberal application. Levy, 731 F.2d at 1002 ("We have adopted the inclusionary or positive approach to [Rule 404(b)]; as long as the evidence is not offered to prove propensity, it is admissible.").

A party must satisfy three requirements in order for evidence of "other crimes, wrongs or acts" to be admitted under Rule 404(b). First, the evidence must be

offered for a purpose other than to prove the defendant's bad character or criminal propensity.  See United States v. Mickens, 926 F.2d 1323, 1328 (2d Cir. 1991) (citing United States v. Colon, 880 F.2d 650, 656 (2d Cir. 1989)).  Second, the evidence must be relevant under Rules 401 and 402 and more probative than prejudicial in accordance with Rule 403.  See Mickens, 926 F.2d at 1328 (citing United States v. Ortiz, 857 F.2d 900, 903 (2d Cir. 1988)); Levy, 731 F.2d at 1002.  Third, if the defendant requests that the jury be instructed as to the limited purpose for which the government's evidence is being admitted, the court must furnish such an instruction.  See Mickens, 926 F.2d at 1328-29; Levy, 731 F.2d at 1002.

   B.   Application

      1.   Evidence of the Defendant's 2010 Plan to Rob a Pawn Shop Owner Is Admissible as Direct Evidence of the Charged Hobbs Act Conspiracy

Approximately one year before the defendant and CC1 agreed to commit the Hobbs Act robbery charged in Count One of the indictment, the defendant conspired with a pawn shop employee to rob the owner of the pawn shop when he traveled into Manhattan to sell gold.  The defendant was recorded by CW1 in August 2010 proposing and planning the pawn shop robbery and, on August 17, 2010, the defendant asked CW1 to participate in the robbery and to obtain a gun and silencer for use in the course of the robbery.  In these recorded conversations, the defendant informed CW1 that he intended to kill the pawn shop owner in the course of the robbery to avoid getting caught for the robbery.

The defendant's statements about the pawn shop robbery are admissible as direct evidence to prove Count One.  As part of both the pawn shop robbery and the charged robbery conspiracy, the defendant intended to: (a) target similar victims, with similar goods

12

(sellers of jewelry and luxury watches); (b) use similar means and methods (a firearm); and (c) work with at least one of the same criminal associates (CW1).  As in <u>United States v. Steele</u>, evidence of the defendant's plan to commit the pawn shop robbery is admissible as direct evidence of the conspiracy charged in Count One because it "fit[s] the pattern of the . . . charged robber[y] and thus was relevant because it tended to make it more likely than not that [the defendant] had engaged in [the charged] robbery conspiracy."  2010 WL 3025200, at *5 (holding that uncharged robbery was properly admitted as direct evidence of charged robbery conspiracy).

In addition, evidence of the defendant's participation in the proposed pawn shop robbery is admissible as direct evidence of Count One because it shows "the nature and existence of the conspiracy" and is direct evidence of the defendant's "leadership" in the conspiracy.  <u>See</u> <u>Barrett</u>, 2011 WL 6704862, at *7.  Indeed, the defendant assumed leadership roles in both the planned pawn shop robbery and the charged conspiracy to rob a warehouse of jewelry:  he proposed the details as to how the robberies would be conducted; he recruited additional participants; and he suggested that the participants carry weapons during the robberies.  Testimony about the defendant's plan to rob the pawn shop owner also provides crucial background for, and "complete[s] the story" of, the robbery conspiracy charged in the indictment.  <u>See</u> <u>Carboni</u>, 204 F.3d at 44.  Accordingly, the defendant's statements about the pawn shop robbery should be admitted as direct evidence of the charged robbery conspiracy.

2.      Evidence of the Defendant's 2010 Plan to Rob a Pawn Shop Is
Admissible Pursuant to Federal Rule of Evidence 404(b)

Evidence of the defendant's plan to commit the pawn shop robbery is also admissible under Rule 404(b) as to the Hobbs Act conspiracy charged in Count One and the firearms offenses charged in Counts Two, Three and Four.  See Fed. R. Evid. 404(b).  The defendant's plan to commit an armed robbery of jewelry a year before the charged armed robbery of jewelry is highly probative evidence of the defendant's intent to commit the charged crimes, his motive in agreeing to commit the charged crimes, his knowing and intentional agreement to participate in the robbery and to use a firearm during the robbery, and the absence of any mistake or misunderstanding in his planning to commit the robbery with CC1 and CW1.  Evidence of the pawn shop robbery is admissible for these purposes under Rule 404(b).

It is well-settled in this circuit that evidence of involvement in prior robberies or conspiracies to commit robbery is admissible under Rule 404(b) to prove a charged robbery conspiracy.  See, e.g., United States v. Carlton, 534 F.3d 97, 102 (2d Cir. 2008) (holding evidence of prior bank robberies admissible under Rule 404(b) to show modus operandi relevant to proving charged robbery, even where prior robberies were not identical in details to charged robbery); United States v. Lofton, No. 06-2491-CR, 2008 WL 885825, at *1 (2d Cir. Mar. 31, 2008) (holding evidence of prior acts, including two robberies, admissible under Rule 404(b) to show defendant's "intent in robbing drug dealers"); United States v. Jamison, 299 F.3d 114, 121 n.3 (2d Cir. 2002) (holding evidence of prior armed robbery admissible under Rule 404(b) to prove intent to commit charged armed robbery); United States v. Delva, No. 12 CR 802, 2014 WL 4460360, at *8 (S.D.N.Y. Sept. 9, 2014)

("In this regard, statements suggesting prior robbery experience are admissible under Rule 404(b) and relevant case law for the proper purposes of showing the relationship of trust between the defendant and his coconspirators, . . . completing the story of the crimes charged, and showing plan and preparation." (internal citation omitted)); United States v. Serrano, No. 13 CR 58, 2014 WL 2696569, at *8 (S.D.N.Y. June 10, 2014)  (admitting recorded conversation regarding defendant's plan to commit a burglary of watches and cash under Rule 404(b) to prove defendant's modus operandi).   Accordingly, the defendant's statements about the planned pawn shop robbery should be admitted at trial pursuant to Rule 404(b).

> 3.   Evidence of the Defendant's Possession of Firearms Is Admissible Pursuant to Rule 404(b)

As described above, in conversations with CW1 recorded between August 2011 and October 2011 – the period charged in Count One of the indictment – the defendant discussed his possession of numerous firearms in furtherance of his ongoing criminal activity.  Specifically:

- in August 2011, the defendant told CW1 he had entered into an agreement with a female associate to collect a debt on her behalf in exchange for a portion of the collection, and he accepted a firearm from her to use in the course of the extortion;[1]

- on October 15, 2011, the defendant described his possession of firearms, which he in turn provided to another individual for use in an armed robbery;

- on August 31, 2011, the defendant discussed his past disposal of numerous firearms in an inlet located in the vicinity of West 20th Street and Neptune Avenue in Brooklyn, New York; and

---

[1] The defendant also admitted participating in this extortion in post-arrest statements to law enforcement on November 2, 2011.

15

- on October 8, 2011, the defendant discussed his past disposal of two firearms with silencers in an inlet located in the vicinity of West 20th Street and Neptune Avenue in Brooklyn, New York.

It is well-settled in the Second Circuit that these types of statements are admissible at trial pursuant to Rule 404(b) to show access to and knowledge of firearms, and motive and intent to possess a firearm. See, e.g., United States v. Arroyo, 600 F. App'x 11, 13-14 (2d Cir. 2015) ("[E]vidence that [defendant] possessed a firearm less than seven months after the September 2011 drug sales is certainly relevant to show that he had an opportunity to possess a gun at the time of those sales."); United States v. Robinson, 560 F.2d 507, 513 (2d Cir. 1977) (holding that defendant's "possession of the gun was also admissible under FRE 404 on the independent ground that it tended to show he had the 'opportunity' to commit the bank robbery, since he had access to an instrument similar to that used to commit it."); Barrett, 2011 WL 6935500, at *4 (E.D.N.Y. 2011) ("In addition, the evidence may properly be admitted for the non-propensity purpose of demonstrating [the defendants'] access to and knowledge of firearms.").

In United States v. Taylor, for example, the defendant was charged with conspiracy to commit Hobbs Act robbery, Hobbs Act robbery and use of a firearm in furtherance of the Hobbs Act robbery. See 767 F. Supp. 2d 428, 430 (S.D.N.Y. 2010). The government moved to admit the defendant's possession of firearms in connection with an uncharged offense to "show [the defendant's] opportunity to possess and access firearms." Id. at 438. The Court granted the government's motion, explaining that the defendant's "prior gun possession is directly relevant to the issue of opportunity and absence of mistake and also admissible to demonstrate [the defendant's] ability to access such a weapon." Id. Under well-settled case law in this circuit, the Court should admit the defendant's

16

statements about his firearm possession as evidence under Rule 404(b) to show access to and knowledge of firearms, and motive and intent to possess a firearm.

  C.  <u>The Probative Value of this Evidence Offered Substantially Outweighs Any Prejudice Under Rule 403</u>

    The evidence proffered above is offered for the permissible purpose of directly proving the charged crimes, or as Rule 404(b) evidence.  This evidence is not offered to show criminal propensity or to inflame the jury, and it easily withstands the balancing test under Federal Rule of Evidence 403.  In this case, the probative value of the proffered evidence is clear – as described above, the evidence tends to prove the existence and scope of the conspiracy; motive and intent to commit the charged crimes; preparation, plan, knowledge, and absence of mistake; and access to firearms.  On the other hand, the prejudice arising from such evidence is minimal, given that the other acts do "not involve conduct any more sensational or disturbing" than the offenses charged.  <u>Pitre</u>, 960 F.2d at 1120 (internal quotation omitted); <u>see also</u> <u>United States v. Williams</u>, 205 F.3d 23, 33-34 (2d Cir. 2000) ("Moreover, we find no undue prejudice under Rule 403; the evidence did not involve conduct more serious than the charged crime and the district court gave a proper limiting instruction."); <u>United States v. Taylor</u>, 767 F. Supp. 2d 428, 438 (S.D.N.Y. 2010) ("Finally, because the prior conviction did not involve conduct any more sensational or disturbing than the crime for which [the defendant] is charged, the Court finds that the introduction of [the defendant's] prior firearms possession conviction is not more prejudicial than probative.").  In addition, any potential prejudice can be effectively mitigated by a cautionary instruction limiting the jury's consideration of the 404(b) evidence to the purpose for which it is offered, both at the time the evidence is received and during the Court's final

charge.  See, e.g., United States v. Pipola, 83 F.3d 556, 566 (2d Cir. 1996).  Accordingly,

Rule 403 poses no bar to the admission of the proposed evidence and it should be admitted.

II.     A Defendant's Entrapment Defense Opens the Door to Predisposition Evidence

The government anticipates that the defendant may raise an entrapment defense at trial.  In the event the defendant raises such a defense and meets the standard to do so set forth below, the government moves in limine to admit certain evidence to rebut the defense, including: (a) the defendant's identification as a high-ranking member of Russian organized crime and the significance of certain tattoos on his body in connection with that position; (b) evidence of the defendant's previous participation in the disposal of firearms; (c) the defendant's prior fraud convictions; (d) evidence of other crimes he planned and discussed in recordings made during the instant investigation.

A.     Legal Standard

In order to submit an entrapment defense to the jury, the defendant must proffer sufficient evidence to establish by a preponderance that he was induced to commit any crimes as to which he argues entrapment.  See United States v. Al-Moayad, 545 F.3d 139, 154 (2d Cir. 2008).  If the defendant produces prima facie evidence of inducement, the government may rebut the defense by proving the defendant's predisposition to commit the offenses at issue.[2]  See United States v. Brand, 467 F.3d 179, 189 (2d Cir. 2006).  The government may prove such predisposition by demonstrating any of the following: "(1) an existing course of criminal conduct similar to the crime for which [the defendant] is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as

_____

[2] The government does not concede that the government induced the defendant to commit any of the charged crimes.  See United States v. Brand, 467 F.3d 179, 190 (2d Cir. 2006) (when the government does not concede inducement, the defendant's burden should not be treated as a "hollow requirement," and "a defendant cannot simply point to the government's use of an undercover agent or confidential informant.").

evidenced by the accused's ready response to the inducement." United States v. Al-Moayad, 545 F.3d 139, 154 (2d Cir. 2008) (internal quotation marks omitted).  A defendant is considered to have a ready response to inducement where he "respond[s] enthusiastically" to the suggestion of a crime.  See United States v. Lew, 980 F.2d 855, 856 (2d Cir. 1992), overruled on other grounds by United States v. Greer, 223 F. 3d 41 (2d Cir. 1992).

Evidence of an "existing course of criminal conduct" similar to the charged crimes may include events that occurred both before and after any alleged inducement.  See United States v. Silvestri, 719 F.2d 577, 583 (2d Cir. 1983).  Further, where evidence of past conduct is offered to show predisposition, that past conduct need not be criminal to be admissible.  See United States v. Gantzer, 810 F.2d 349, 352 (2d Cir. 1987); United States v. Harvey, 991 F.2d 981, 994 (2d Cir. 1993).  The Second Circuit has held that "evidence of prior criminal conduct [need not] be formally the same as the crime charged," but rather that other conduct need only be "'morally indistinguishable'" from the crime charged and "of the same kind."  United States v. Viviano, 437 F.2d 295, 299 n.3 (2d Cir. 1971) (internal quotation marks omitted); see also United States v. Anzalone, 626 F.2d 239, 246 (2d Cir. 1980) (finding possession of an authentic, stolen painting sufficiently "morally indistinguishable and of the same kind" as counterfeiting to show predisposition).

B.    Application

If the defendant raises an entrapment defense, the government will seek to rebut the defense by proving the defendant's criminal disposition through the admission of evidence in the form of recorded meetings with CW1 and through CW1's testimony that the defendant had a ready, enthusiastic response to the alleged inducement and that he had

already formed the design to commit armed robbery when CW1 proposed the robbery charged in the indictment.

The government will also seek to introduce evidence of the defendant's participation in an existing course of criminal conduct similar to the charged crimes, including the defendant's identification as a "vor v zakone," that is, a high-ranking member of Russian organized crime.  When the defendant was interviewed by law enforcement on October 24, 2011, he admitted his status as a "vor v zakone" ("vor" or, plural, "vory") and showed agents the star tattoos on his shoulders and knees that indicate his status as a "vor." The government will seek to introduce testimony from an academic expert on Russian culture on the meaning of the defendant's tattoos, and their significance in the Russian and former-Soviet criminal community of which the defendant is an admitted member.  Through the testimony of cooperating witnesses and the expert witness, the government will establish that the defendant, as a "vor," has devoted his life to criminal activity, to making his living by stealing from others, and to living a life dedicated to violence where necessary to meet other criminal ends.

Through the testimony of a cooperating witness ("CW2"), the government will also seek to establish that the defendant admitted that he previously managed a "crew" of criminals who worked for him.  The government will seek to establish through the testimony of CW2 that the defendant also bragged about his authority among Russian criminals in Brooklyn.  The defendant told CW2 that he was frequently asked by other members of the Russian criminal underworld for permission to commit certain crimes in Brooklyn, and that the defendant gave permission for the commission of these crimes, including crimes of violence.  This testimony is plainly relevant to the defendant's

predisposition to commit the charged offenses.  See, e.g., United States v. Tutino, 883 F.2d 1125, 1128 (2d Cir. 1989) (affirming admissibility of evidence linking defendants to organized crime to show their predisposition to commit narcotics offenses, where they raised an entrapment defense); see also United States v. Greenwood, 594 F. App'x 486, 489 (10th Cir. 2014) (holding that defendant was predisposed to commit the charge drug crimes and noting that a witness "testified that [the defendant] sold guns and drugs because that is what gang members do"); United States v. Moore, 990 F.2d 1264 (9th Cir. 1993) (holding that jury was entitled to conclude that defendant was predisposed to commit the charged crimes in part because "[t]here was evidence that appellant was involved with a known criminal organization, the Mongrels Motorcycle gang");  Brazil v. United States, No. 07-20531, 2014 WL 2922369, at *2 (E.D. Mich. June 27, 2014) (noting that entrapment defense permitted witness "to testify regarding [defendant]s' role in a Saginaw gang notorious for drug trafficking" to show predisposition); United States v. Nochez, No. 08 CR 0730, 2010 WL 703087, at *1 (N.D. Cal. Feb. 25, 2010) (finding that if defendant were to raise an entrapment defense, evidence of his gang membership would be admissible to prove his predisposition to commit the charged crimes).

The government will also seek to admit evidence of the defendant's participation in the disposal of weapons in the 1990s.  As described above, the defendant admitted in recorded conversations with CW1 to having disposed of numerous firearms in an inlet in Brooklyn.  The defendant's admitted willingness to abet violent crime by disposing of weapons used in those crimes provides further proof of his predisposition to participate in criminal activity, including violence, and to use firearms in furtherance of his crimes.  See, e.g., United States v. McLaurin, 764 F.3d 372, 382-83 (4th Cir. 2014) (holding

that defendant's possession of a firearm eight months prior to arrest in sting operation was "similar enough to establish predisposition because it involved [the defendant's] knowing possession of a firearm, as the success of the planned robbery depended on [the defendants] being willing to sufficiently arm themselves"); United States v. Mayo, 705 F.2d 62, 68-69 (2d Cir. 1983) (finding there was "substantial evidence of [defendant's] predisposition to violate the firearms laws" where the government introduced evidence of his prior conviction under the firearms laws as well as his unlawful possession of firearms prior to any inducement).

In addition, the government will seek to introduce the defendant's prior fraud convictions in the Southern District of New York to show his predisposition to commit the charged offenses. The defendant was first convicted of conspiracy to commit bank fraud in the Southern District of New York in 1999 and was sentenced to 12 months' imprisonment. See United States v. Bumagin, No. 98 CR 00470 (S.D.N.Y). In 2002 he was convicted again in the Southern District of New York of conspiring to possess and pass a counterfeit check and attempting to pass a fictitious obligation. See United States v. Bumagin, No. 01 CR 0797 (S.D.N.Y). He was sentenced to 71 months' imprisonment for this crime. The defendant's prior convictions are relevant to his predisposition to commit virtually any crime proposed to him.

Further, the government will seek to prove the defendant's predisposition to commit the charged crimes by introducing evidence of the other crimes he discussed and planned independent of CW1's alleged inducement of the charged robbery conspiracy and firearms offenses. For example, as set forth above, in 2010, the defendant planned to rob the owner of a pawn shop. The defendant proposed this robbery to CW1 and the defendant

explained that he intended to kill the pawn shop owner to avoid getting arrested for the crime.  In 2011, during the period of the conspiracy charged in Count One, the defendant also told CW1 he had agreed to participate in extortionate debt collection on behalf of a female associate, in exchange for a portion of the money he collected.  He also admitted to receiving a firearm from the woman to use in the course of the extortion.  The defendant admitted his involvement in the extortion to law enforcement following his arrest.  Finally, the defendant also admitted to CW1 that he provided a firearm to an associate for use in an armed robbery during the same time period in which he is alleged to have provided a gun to CW1 for use in charged robbery conspiracy.

        The defendant's involvement in these violent, armed crimes – none of which were proposed by CW1 – is admissible to prove the defendant's predisposition to commit the charged crimes, and to rebut an entrapment defense.  See United States v. Thomas, No. 99-1283-CR, 2000 WL 233648, at *1 (2d Cir. Feb. 22, 2000) (affirming admission of testimony "describing prior robberies attempted or committed" by defendant to show his "predisposition to conspire . . . to commit the robbery alleged in the prior case"); see also United States v. Dominguez, No. 07-1219-CR, 2008 WL 2235371, at *3 (2d Cir. June 2, 2008) (affirming admission of defendant's statements regarding his "ability and willingness to steal" and his having "a group that would steal from stash locations," and agent's statement that even if a robbery crew does not rob one location it typically will rob a different one, as evidence of predisposition); Tutino, 883 F.2d at 1128 (affirming admissibility of defendant's prior conviction for extortion to rebut claim that defendant had been coerced by cooperating witness who defendant claimed to fear); United States v. Dyman, 739 F.2d 762, 770 (2d Cir. 1984) (upholding district court's instruction that jurors

could consider the defendant's prior burglary convictions to determine "his predisposition or readiness to commit" the charged burglary); United States v. Nunez, No. 07-1218-CR, 2008 WL 4810090, at *4 (2d Cir. Nov. 3, 2008) (finding defendants predisposed to commit charged crime of conspiring to rob eleven kilograms of cocaine where the defendants had committed drug or robbery crimes in the past and one defendant expressed eagerness that the drug dealer might have even more cocaine to steal). Accordingly, if the defendant raises an entrapment defense, the government should be permitted to introduce evidence of these crimes and acts to show the defendant's predisposition to commit the charged crimes.

III.    The Defendant Should Be Precluded from Raising an Insanity Defense or From
        Offering Evidence Relating to a Mental Disease or Defect or Any other Mental
        Condition

       By letter to the Court dated August 13, 2015, the government gave notice of

its intent to move in limine to preclude the defendant from raising an insanity defense or

from offering expert evidence of a mental condition relating to a mental disease or defect or

any other mental condition of the defendant.  (Dkt. No. 135.)  The government incorporates

that letter by reference herein.

IV.    The Defendant's Pre- and Post-Arrest Statements Were Voluntary and Are
       Admissible at Trial

            As stated above, the defendant made statements to law enforcement on

November 27, 2011 and, following his arrest and his written and oral waiver of his Miranda

rights, on November 2, 2011.[3]   In these interviews, the defendant made inculpatory

statements about his participation in the charged crimes and other criminal activity.   The

defendant has not moved to suppress these statements prior to trial, as required by Federal

Rule of Criminal Procedure 12(b)(3)(C), and he has therefore waived the right to do so.

See, e.g, United States v. McCullough, No. 12-539-CR, 2013 WL 1729712, at *1 (2d Cir.

Apr. 23, 2013) ("[Defendant] did not timely move to suppress the records pursuant to

Federal Rule of Criminal Procedure 12(b)(3)(c). He consequently has waived the

argument."); United States v. Morrell, No. 04-5372-CR, 2005 WL 1607077, at *1 (2d Cir.

July 8, 2005) (same);  United States v. Miller, 382 F. Supp. 2d 350, 364 (N.D.N.Y. 2005)

("Motions to suppress must be made before trial, and a party waives any objection or

request it fails to raise.").   Accordingly, the government respectfully submits that, subject to

the rules set forth below, the defendant's statements are therefore admissible at trial.

---

            [3]  A report containing the defendant's post-arrest statements was disclosed to
defendant under cover of letter dated December 30, 2011, along with a copy of his signed
Miranda waiver.  (See Dkt. No. 12 (discovery letter dated Dec. 30, 2011), Exs. 6 (signed
Miranda waiver), 7 (report).)  A report containing the defendant's pre-arrest statements was
disclosed to defendant as Rule 16 discovery on January 23, 2012.  (See Dkt. No. 17
(discovery letter dated Jan. 23, 2012) Ex. 28.)

V.      The Defendant Should be Precluded from Cross-Examining Law Enforcement
        Witnesses in an Effort to Solicit Allegedly Exculpatory Statements

        The government anticipates that it will introduce at trial the defendant's

statements in the form of recordings made by CW1 and oral statements made by the

defendant to law enforcement both before and after his arrest.  For example, the government

intends to introduce recordings of the defendant discussing his ongoing and previous

criminal conduct, including: (1) a plan to commit an armed robbery of a pawnshop owner;

(2) his involvement in the armed extortionate collection of a debt on behalf of a female

associate; (3) his provision of a firearm to another individual for use in an armed robbery;

(4) his disposal of firearms used in violent crimes in an inlet in Brooklyn; and (5) his

disposal of two firearms with silencers in the inlet located in Brooklyn.  Under the

circumstances described above, the government also intends to elicit on direct examination

of law enforcement agents that the defendant admitted that he: (1) had given a firearm to

CW1 for use in the planned warehouse robbery as charged in Counts Two, Three and Four

of the indictment; (2) possessed a firearm and ammunition for use in the extortionate

collection of a debt for a female associate; (3) had planned to rob a pawnshop with an

individual who worked at the pawnshop, and discussed killing the pawnshop owner; and (4)

was a "vor v zakone," or Russian "thief-in-law."

        These statements of the defendant are admissible because, pursuant to Federal

Rule of Evidence 801(d)(2), "[a] statement that meets the following conditions is not

hearsay: . . . [t]he statement is offered against an opposing party and . . . was made by the

party in an individual or representative capacity. . . ."  Fed. R. Evid. 801(d)(2)(A).  By

contrast, there is no exception allowing a defendant to introduce his own exculpatory

statements.  Indeed, Federal Rule of Evidence 801(d)(2) does not apply to a defendant.  See,
e.g., United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to
introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is
not admissible."); United States v. Black, No. 13 CR 316, 2014 WL 5783067, at *1
(E.D.N.Y. Nov. 5, 2014) (granting government's motion in limine to preclude defendant
from eliciting self-serving statements from law enforcement on grounds that "[w]hen the
defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is
hearsay, and it is not admissible"); United States v. Vrancea, No. 13–CR–0316, 2013 WL
549099, at *4 (E.D.N.Y. Jan.4, 2013) ("Under this rubric, self-serving and exculpatory
statements are inadmissible hearsay and may not be introduced by the defendant at trial.");
see also, e.g., United States v. Quansah, No. 05-50073-CR, 2006 WL 620755, at *1 (9th Cir.
Mar. 6, 2006) ("Self-serving statements are not exempted from the hearsay rule by Federal
Rule of Evidence 801(d)(2)(A) or any other exemption or exception, and are thus
inadmissible hearsay."); United States v. Wilkerson, 84 F.3d 692, 695 (4th Cir. 1996)
(noting that during direct examination, the government "could have introduced inculpatory
statements made by [the defendant]" but also recognizing that the Federal Rules of Evidence
"do not provide an exception for self-serving, exculpatory statements made by a party which
are being sought for admission by that same party").

Under this well-settled law, the defendant should be precluded from eliciting any self-serving exculpatory statements made during recorded conversations with CW1 or during interviews with law enforcement before and after his arrest.[4]

---

[4]        Of course, the defendant is free to take the stand and testify on his own behalf about his knowledge.  He should not, however, be permitted to elicit his false exculpatory statements from other witnesses through inadmissible hearsay.

VI.     The Government Is Entitled to Cross-Examine the Defendant Under Rule 609(a)(2)
        About His 2002 Convictions and Should be Permitted to Cross-Examine Him about
        His 1999  Conviction Under Rule 609(b)

       If the defendant testifies at trial, the government moves in limine to cross-examine him about his 2002 convictions in the Southern District of New York for conspiracy to possess and pass a counterfeit check and attempting to pass a fictitious obligation and his 1999 conviction for bank fraud conspiracy.  As set forth below, the government is entitled to cross-examine the defendant about his 2002 convictions under Federal Rule of Criminal Procedure 609(a)(2) because both crimes have as elements a dishonest act or false statement and the defendant was released from incarceration on those charges less than 10 years ago.  See Fed. R. Crim. P. 609(b).  The government should also be permitted to cross-examine the defendant on his 1999 conviction for conspiracy to commit bank fraud because the probative value of the prior conviction substantially outweighs its prejudicial effect.  See id.

A.      Legal Standard

       Federal Rule of Evidence 609 governs the admissibility of evidence of prior convictions for impeachment purposes.  Rule 609(a) provides in pertinent part:

> The following rules apply to attacking a witness's credibility for truthfulness by evidence of a criminal conviction: . . . for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving – or the witness's admitting – a dishonest act or false statement.

Fed. R. Crim. P. 609(a).  This prong of Rule 609 is concerned with crimes that are "peculiarly probative of credibility," such as those for "perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi the

commission of which involves some element of dec[e]it, untruthfulness, or falsification bearing on [a witness's] propensity to testify truthfully."  <u>See</u> Fed. R. Evid. 609 Advisory Committee's Note (1974); <u>see also</u> <u>United States v. Hayes</u>, 553 F.2d 824, 827 (2d Cir. 1977) (noting that Rule 609(a)(2) concerns "convictions that bear directly on the likelihood that the defendant will testify truthfully").

Under Rule 609(a)(2), evidence of convictions for crimes that bear on a witnesses' credibility "must" be admitted. <u>See</u> <u>United States v. Estrada</u>, 430 F.3d 606, 615 (2d. Cir. 2005).  In this way, Rule 609(a)(2) differs from 609(a)(1), which gives the Court discretion to admit evidence of a defendant's prior felony conviction if its probative value outweighs its prejudicial effect.   <u>See</u> Fed. R. Crim. P. 609(a)(1).   As the Advisory Committee's note explains, convictions covered by Rule 609(a)(2) are "peculiarly probative of credibility and, under this rule, are always to be admitted."  Fed. R. Evid. 609 Advisory Committee's Note (1974); <u>Hayes</u>, 553 F.2d at 827 ("[E]vidence of conviction of a certain type of crime — one involving 'dishonesty or false statement' — must be admitted, with the trial court having no discretion, regardless of the seriousness of the offense or its prejudice to the defendant.").  "The presumption under Rule 609(a)(2) . . . is that the 'essential facts' of a witness's convictions, including the statutory name of each offense, the date of conviction, and the sentence imposed, are included within the 'evidence' that is to be admitted for impeachment purposes."  <u>United States v. Estrada</u>, 430 F.3d 606, 615 (2d Cir. 2005).

Rule 609(a)(2) is, however, limited by Rule 609(b), in cases where more than "10 years have passed since the witness's conviction or release from confinement for it, whichever is later."  Fed. R. Crim. P. 609(b).  Evidence of such convictions "is admissible

only if . . . its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect" and party intending to cross-examine the witness with the prior conviction provides notice of its intent to do so.  Id.  "In weighing the probative value of the evidence of the prior conviction against its prejudicial effect, courts in this Circuit consider the following five factors: '[1] the impeachment value of the prior crimes, [2] the date of the conviction and the Defendant's subsequent history, [3] the degree of similarity between the past crimes and this crime, [4] the centrality of the [d]efendant's credibility in this case, and [5] the importance of the [d]efendant's testimony."  United States v. Brown, 606 F. Supp. 2d 306, 311-12 (E.D.N.Y. 2009) (quoting United States v. Jenkins, No. 02–CR–1384, 2003 WL 21047761, at *2 (S.D.N.Y. May 8, 2003)).[5]

    B.    Application

        1.    The Defendant's 2002 Conviction

On January 24, 2002, the defendant pleaded guilty to conspiracy to possess and pass a counterfeit check, in violation of 18 U.S.C. § 371, and attempting to pass a fictitious obligation, in violation of 18 U.S.C. §§ 514(a)(2), in the Southern District of New York.  See United States v. Bumagin, No. 01 CR 797 (S.D.N.Y.) ("the 2002 S.D.N.Y. Convictions").  Under Rule 609(a)(2), the government is entitled to cross-examine the defendant about the 2002 S.D.N.Y. Convictions.

---

[5] With respect to the third factor – the degree of similarity between the past crimes and this crime – "similarity of past and present offenses weighs heavily against the use of prior criminal convictions for impeachment purposes."  Brown, 606 F. Supp. 2d 306, 314 (E.D.N.Y. 2009).  In other words, a prior crime is more likely to be admitted under Rule 609(b) where it is dissimilar to the charged crimes.  See, e.g., United States v. Gilbert, 668 F.2d 94, 97 (2d Cir. 1981) (admitting prior crime under Rule 609(b) in part because the prior crimes "were not so similar as to invite improper inferences").

First, it is beyond dispute that these crimes fall within the scope of Rule 609(a)(2) because "establishing the elements of [each] crime required proving – or the witness's admitting – a dishonest act or false statement."  Fed. R. Crim. P. 609(a)(2). Indeed, the defendant's convictions for conspiring to possess and pass a counterfeit check and a fictitious obligation required the defendant to admit at his guilty plea an intent to defraud.  See 18 U.S.C. §§ 371, 513(a), 514(a)(2).  Courts are uniform in holding that such offenses are admissible under Rule 609(a)(2).  See, e.g., United States v. Cuozzo, 962 F.2d 945, 948 (9th Cir. 1992) ("[W]e have previously held in this circuit that passing counterfeit money is a crime involving dishonesty and fraud.  It follows that a conviction for conspiracy and aiding and abetting the dealing of counterfeit obligations or securities likewise demonstrates a propensity towards testimonial dishonesty." (internal citation omitted)); United States v. Morrow, 977 F.2d 222, 228 (6th Cir. 1992) ("Counterfeit cash is a pretender to the real thing, and dishonesty is a core ingredient in the offense of counterfeiting."); United States v. Noble, 754 F.2d 1324, 1331 (7th Cir. 1985) (holding that "[c]ounterfeiting is an offense in the nature of crimen falsi" and therefore admissible under Rule 609(a)(2)); United States v. Watts, 934 F. Supp. 2d 451, 490 (E.D.N.Y. 2013) ("Rule 609(a)(2) mandates admission of Dupree's prior convictions for bank fraud, conspiracy to commit bank fraud, and false statements, all offenses involving dishonesty or false statements, in order to impeach the credibility of Dupree's prior testimony."); United States v. Watkins, No. 08 CR 30070, 2009 WL 927494, at *1 (C.D. Ill. Apr. 2, 2009) ("Thus, the Court finds that Watkins' convictions for conspiracy to utter or possess counterfeit securities and uttering or possessing counterfeit securities also qualify for admission under Rule 609(a)(2).").

Moreover, the defendant's 2002 convictions fit within the scope of Rule 609(a)(2) because the defendant was released from the corresponding term of incarceration on or about December 11, 2006 – approximately eight years and two months before trial is to begin in this matter.  See Fed. R. Crim. P. 609(b) (limiting the use of convictions after 10 years).   Accordingly, if the defendant testifies at trial, the government is entitled to introduce the "statutory name of each offense, the date of conviction, and the sentence imposed" for the defendant's 2002 convictions.  United States v. Estrada, 430 F.3d 606, 615 (2d Cir. 2005).

### 2.   The Defendant's 1999 Conviction

On November 4, 1998, the defendant pleaded guilty to bank fraud conspiracy, in violation of 18 U.S.C. § 371, in the Southern District of New York.  See United States v. Bumagin, No. 98 CR 0470 (S.D.N.Y.) ("the 1999 S.D.N.Y. Conviction").  Each of the five factors relevant to assessing a prior conviction under Rule 609(b) counsels in favor of permitting the government to cross-examine the defendant about this crime.

First, a prior conviction for conspiracy to commit bank fraud is plainly probative of the defendant's veracity as a witness.  See United States v. Osazuwa, 564 F.3d 1169, 1175 (9th Cir. 2009) ("It is undisputed that bank fraud is an act of dishonesty . . . ."); United States v. Gilbert, 668 F.2d 94, 97 (2d Cir. 1981) (admitting prior convict for fraud conviction under Rule 609(b) in part because "the impeachment value of a fraud conviction was high"); United States v. Payton, 159 F.3d 49, 58 (2d Cir. 1998) (admitting 13-year-old convictions for false statements in part because "the impeachment value of her convictions was substantial"); Hayes, 553 F.2d at 827 (noting that comes that involve an element of dishonesty concerns "bear directly on the likelihood that the defendant will testify

truthfully"); United States v. Mesbahuddin, No. 10 CR 726, 2011 WL 3841385, at *2 (E.D.N.Y. Aug. 26, 2011) (finding that prior conviction for attempted bank fraud involved element of dishonest act or false statement); see also Fed. R. Evid. 609 Advisory Committee's Note (1974) (noting that crime with an element of dishonest are "peculiarly probative of credibility").

The second factor is equally compelling. After the defendant was convicted of the conspiracy to commit bank fraud offense in 1999, the defendant served his 12-month sentence and then was promptly arrested again in 2002 for the counterfeit check and fictitious obligation frauds described above. In other words, "the defendant's subsequent history did not suggest that he had abandoned his earlier ways," making the older conviction highly probative. See United States v. Gilbert, 668 F.2d 94, 97 (2d Cir. 1981) (admitting conviction for mail fraud under Rule 609(b) in trial on charges of conspiracy to manipulate security trading and various securities violations); United States v. Little, 567 F.2d 346, 350 (8th Cir. 1977) (holding that fourteen-year-old fraud conviction was admissible under 609(b)).

The third factor also counsels in favor of admission, in so far as the prior conviction for bank fraud is entirely dissimilar to the charged crimes of robbery and possession of firearms and ammunition. It is well-settled that "similarity of past and present offenses weighs heavily against the use of prior criminal convictions for impeachment purposes," Brown, 606 F. Supp. 2d at 314, whereas the dissimilarity of the previous crime to the charged crimes weights in favor of admission, see, e.g., Gilbert, 668 F.2d at 97 (admitting prior crime under Rule 609(b) in part because the prior crimes "were not so similar as to invite improper inferences").

36

Finally, the fourth and fifth factors of the Rule 609(b) analysis also weigh strongly in favor of the admission of the 1999 conviction.  If the defendant testifies in furtherance of an entrapment defense, for example, his credibility will become a "central[]" and his testimony will become important evidence for both parties in the case.  See Brown, 606 F. Supp. 2d  at 311-12; Payton, 159 F.3d 49, 58 (2d Cir. 1998) (admitting 13-year-old convictions for false statements because defendant's testimony was "crucial"); United States v. Slade, No. 12 CR 0367, 2013 WL 5873576, at *5 (E.D. Pa. Nov. 1, 2013) ("If Defendant chooses to testify, he places his credibility directly at issue."); United States v. Rosato, No. 98 CR 343, 1999 WL 5877, at *3 (E.D. Pa. Jan. 27, 1999) ("A defendant who testifies is invariably the centerpiece of any criminal defense, and the defendant's credibility is always at issue.").  If the defendant testifies, the jury is entitled to have a complete picture of the defendant and his lack of veracity.  For all of these reasons, the government should be permitted to cross-examine the defendant on his 1999 conviction for bank fraud conspiracy.

VII.    Pursuant to the Stipulation Entered Into By the Parties, the Defendant Should Be
        Precluded From Using the Draft Transcriptions at Trial

        At the outset of this case, the government disclosed draft transcripts of consensual recordings made by the cooperating witness and of calls made by the defendant from MDC.  As a precondition of receiving those draft transcripts, the defendant entered into a stipulation with the government on January 6, 2012, which provides that "[d]raft transcripts provided to the defendant by the United States or copies, redacted copies, or any portions thereof . . . cannot be used in any proceeding by any person, including persons who are not parties to this case."  (See Ex. A. (Jan. 6, 2012 Stipulation ¶ 1).)  Such stipulations are enforceable and prohibit the parties from using the draft transcripts at trial.  See, e.g., United States v. Mayes, No. 10 CR 473, 2011 WL 5320976, at *3 (E.D.N.Y. Nov. 2, 2011); United States v. Daughtry, No. 09 CR 1132, 2011 WL 724668, at *3 (S.D.N.Y. Feb. 25, 2011) (declining to give weight to the fact that the government's drafts had differences in attributions to defendants where "the Parties ha[d] a stipulation providing that the transcript [was] only in draft form").  Accordingly, the defendant should be precluded from using the draft transcripts in any way at trial.

CONCLUSION

For the reasons set forth above, the government's motions in limine should be

granted.

Dated:    Brooklyn, New York
          September 10, 2015

Respectfully submitted,

KELLY T. CURRIE
Acting United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

By:    /s/ Kevin M. Trowel
       Kevin M. Trowel
       Moira Kim Penza
       Assistant United States Attorneys
       (718) 254-6351/6465

# EXHIBIT A

JDG/JMK
F.#2011R01816

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA          S T I P U L A T I O N

    - against -                      11 CR 800 (WFK)

SEMYON BUMAGIN,

        Defendant.

- - - - - - - - - - - - - - -X

        THE PARTIES STIPULATE as follows:

        1.   Draft transcripts provided to the defendant by the United States or copies, redacted copies, or any portions thereof ("Draft Transcripts") cannot be used in any proceeding by any person, including persons who are not parties to this case;

        2.   The use of Draft Transcripts by the defendant is limited to plea negotiations and trial preparation for this case and the Draft Transcripts may not be used at trial by the defendant in any form or for any purpose whatsoever, including use in cross-examination of any witness;

        3.   Draft Transcripts may not be furnished, directly or indirectly, by the defendant or defense counsel, to anyone who has not signed this stipulation, other than legal staff of an attorney who has signed this stipulation if such people agree not to furnish the Draft Transcripts to others;

4.    All Draft Transcripts, including all copies of such transcripts, whether in the possession of defense counsel or the defendant, will be returned to the United States when final transcripts are provided by the United States or when the jury is sworn in this case, whichever occurs first.

Dated:    Brooklyn, New York
          Jan. 6 , 2012

                                        LORETTA E. LYNCH
                                        United States Attorney
                                        Eastern District of New York

                              By:  _____
                                        James D. Gatta
                                        Jacquelyn M. Kasulis
                                        Assistant U.S. Attorneys

_____
Zoe J. Dolan, Esq.
Attorney for Semyon Bumagin

2